UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TROY BROOKS,


                                    Plaintiff,

                                                        DECISION AND ORDER

                                                        05-CV-6021L


                        v.

D.S.S. CHAPPIUS, et al.,



                                    Defendants.
_____


        Plaintiff, Troy Brooks, appearing *pro se*, filed the complaint in this action under 42 U.S.C.

§ 1983.  Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS"), has sued several DOCS officials and employees, alleging that his constitutional

rights were violated in connection with certain incidents that occurred in December 2003 at

Southport Correctional Facility.  Defendants have moved for summary judgment.


                              **FACTUAL BACKGROUND**


        On December 8, 2003, Brooks was moved from a Special Housing Unit ("SHU") Level III

cell to an SHU Level I cell.  Inmates in Level I cells are subject to more stringent restrictions than

those in Level III cells.  For example, Level I inmates have to remain in restraints during their

exercise periods, while Level III inmates do not.  Dkt. #24 at 7, 8.  Ten days later, Brooks was moved back to Level III, and his Level III privileges were restored.

Defendants contend that Brooks was moved to Level I pending an investigation of a report that plaintiff had damaged an electrical outlet plate in his cell.  After ten days, however, it was discovered that a misbehavior report had never been filed regarding the matter, meaning that there was no basis for his continued confinement in Level I, so Brooks was moved back to Level III. Apparently no further action regarding the alleged property damage was ever taken.

In the instant action, plaintiff alleges that his ten-day confinement in Level I, in the absence of a misbehavior report, violated his right to due process.  Plaintiff also alleges that he was subjected to cruel and inhuman punishment in various ways, including the denial of adequate food.   In addition, he alleges that defendant Correction Officer Frisbie assaulted him, in the presence of several other officers, in retaliation for plaintiff's complaints about certain matters.

## DISCUSSION

### I. Summary Judgment:  General Principles

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court's role in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  The Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (internal quotations omitted).  Where, as here, the plaintiff is proceeding *pro se*, the court must "read the pleadings ⋯ liberally and interpret them to raise the strongest arguments that they suggest."  *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (internal quotations omitted).

## II. Due Process Claim

In evaluating an inmate's due process claim with respect to confinement within prison, a court must consider  "'(1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.'"  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (quoting *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).  *See also Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (even though inmate plaintiff "did not receive the process that was due, he cannot succeed on his [due process] claims if he fails to establish a protected liberty interest").  An inmate has a protected liberty interest in not being confined only if "the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation."  *Tellier*, 280 F.3d at 80 (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)); *accord Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

Although determining whether a particular confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), will involve factual determinations, *Tellier*, 280 F.3d at 80, "the ultimate issue of atypicality is one of law."  *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

Among the factors to be considered are: "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998) (citing *Sandin*, 515 U.S. at 484).

While the Second Circuit has "not established a bright-line rule as to how lengthy a ... confinement will be considered atypical and significant," *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000), the court in *Sealey*, 197 F.3d at 589-90, held that confinement of 101 days in SHU did not meet the *Sandin* standard. Nonetheless, the Second Circuit's "cases 'make clear that duration is not the only relevant factor. The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of "atypical and severe hardship ... .""" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir. 2003) (per curiam)). Therefore, "[b]oth the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (citation omitted). *See also Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) ("unusually harsh conditions" may implicate liberty interest even for relatively short periods of SHU confinement), *cert. denied*, 543 U.S. 1187 (2005).

In the case at bar, defendants argue that the conditions of plaintiffs' Level I confinement, such as denial of telephone and candy privileges, haircuts, and exercise without restraints, were not severe enough to warrant due process protection. Defendants neglect to mention, however, that plaintiff alleges that he was regularly denied food as well. The amended complaint contains a list

- 4 -

of the officers who were assigned to plaintiff's area on each day of his Level I confinement. It appears that each day was broken up into three "tours," presumably each eight hours in length, with one officer per tour. Twenty-three of the twenty-nine entries state that the officer on that particular tour "did not feed the Plaintiff." Dkt. #4-1 at 13-16. The other six entries state that the officers on those tours fed plaintiff "diet loaf." Plaintiff appears to allege, then, that during his ten days in Level I, he was fed six times.

The Supreme Court has observed that states must not deprive prisoners of their "basic human needs–*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). Deprivation of food, even for relatively brief periods, can therefore give rise to a liberty interest. *See, e.g., Gayle v. Keane*, No. 94 Civ. 7583, 1998 WL 187862, at *6 (S.D.N.Y. Apr. 21, 1998) (stating that if plaintiff's allegation that he was deprived of food for the first three days of his SHU confinement were true, "such a deprivation would constitute a significant and atypical deprivation giving rise to a liberty interest"). In addition, "[t]he Second Circuit has held that allegations such as ... the deprivation of food ... should be resolved in the plaintiff's favor on a motion for summary judgment." *Blissett v. Coughlin*, No. 84-CV-779, 1998 WL 440025, at *5 (N.D.N.Y. July 23, 1998) (citing *Wright*, 132 F.3d at 138).

As stated, defendants have not addressed plaintiff's contention that he was denied food during his Level I confinement. If plaintiff's allegations in that regard are true, as I must consider them to be on this motion, I believe that is an "atypical and significant hardship" that would implicate a protected liberty interest. Defendants' argument that plaintiff's due process rights were not violated because he was only in "pre-hearing" confinement (even though no hearing ever took place) is thus beside the point. It is not the *type* of confinement that is at issue, or whether but the

*conditions* of plaintiff's confinement. The same is true of defendants' contention that the failure to file a misbehavior report did not amount to a due process violation. Even though such a procedural misstep might not, in itself, give rise to a due process claim, *see, e.g.*, *Schmelzer v. Norfleet*, 903 F.Supp. 632, 634-35 (S.D.N.Y. 1995), the conditions alleged by plaintiff during his Level I confinement do give rise to such a claim.[1]

## III. Personal Involvement of McGinnis and Chappius

Defendants also contend that plaintiff's claims against defendants Michael McGinnis and Paul Chappius should be dismissed because of the lack of personal involvement by those two defendants. A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983

---

[1] I also note that although defendants appear to be moving to dismiss the complaint in its entirety, they have not even mentioned plaintiff's claim under the Eighth Amendment. *See* Amended Complaint (Dkt. #4-1) at 13-18. The law is clear that, depending on the amount and duration of the deprivation, deprivation of food can give rise to a claim under the Eighth Amendment. *See, e.g.*, *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999); *DeMaio v. Coughlin*, No. 89-CV-01237, 1996 WL 377203, at *4 (W.D.N.Y. June 27, 1996).

Likewise, defendants have not addressed plaintiff's allegations that on one occasion defendant Frisbie stuck plaintiff with "some object like a sharp stickpin in [plaintiff's] rib area" and that Frisbie and others threatened him, stating, "All you niggers need a lynching beatin [sic] sometime, the way we gave it to [another inmate] on Monday" and "You're next." Dkt. #4-2 at 16. These alleged acts and statements were apparently in retaliation for plaintiff having filed a grievance about certain matters. Defendants have not even attempted to show that they are entitled to summary judgment with respect to these allegations, which appear to state a facially valid First Amendment claim.

claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1995)); *see also Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim"). Rather, personal involvement may be shown by evidence that the defendant: (1) participated directly in the alleged constitutional violation; (2) after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Applying those principles here, I find that plaintiff's claims against McGinnis and Chappius must be dismissed. At all relevant times, McGinnis was the Superintendent at Southport. The only evidence of any connection between them and the events giving rise to this lawsuit is that plaintiff wrote a letter to McGinnis in January 2004 complaining about certain matters, and that McGinnis denied several grievances filed by plaintiff concerning those matters. *See* Dkt. #4-2.

This evidence and these allegations are not sufficient to show personal involvement by McGinnis. A supervisory official's receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Liner v. Goord*, 310 F.Supp.2d 550, 555 (W.D.N.Y. 2004). Even "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish

personal involvement." *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998).

In addition, while there is some authority from within this circuit that a supervisory official's denial of a grievance can suffice to show personal involvement, *see, e.g.*, *Atkinson v. Selsky*, No. 03 Civ. 7759, 2004 WL 2319186, at *1 (S.D.N.Y. Oct. 15, 2004), in general personal involvement will not be found unless "the supervisor's response is detailed and specific," *McKenna v. Wright*, No. 01 Civ. 6571, 2004 WL 102752, at *5 (S.D.N.Y. Jan. 21, 2004). *See also McClenton v. Menifee*, No. 05 Civ. 2844, 2006 WL 2474872, at *10 (S.D.N.Y. Aug. 22, 2006) ("a supervisor's mere denial of a grievance is insufficient to establish personal involvement; otherwise, senior administrative officials could generally be named as defendants in prison condition cases").

Here, the record indicates that plaintiff's grievances were assigned to DOCS personnel for investigation, who concluded that there was no evidence to support plaintiff's allegations. *See* Dkt. #4-2 at 10, 18, 24. Based on those conclusions, McGinnis denied the grievances. "There is nothing whatsoever in the record to indicate that [the] investigation[s] w[ere] flawed or biased and even if they were, there is nothing to suggest that [McGinnis] knew or should have know that fact." *Sprau v. Coughlin*, 997 F.Supp. 390, 394 (W.D.N.Y. 1998). Plaintiff's claims against McGinnis are therefore dismissed due to the lack of personal involvement on McGinnis's part.

I reach the same result as to Chappius. Plaintiff alleges that Chappius, who was the Superintendent and Deputy Superintendent of Security at Southport, was the person who ordered plaintiff placed in Level I confinement. There is no evidence, however, that Chappius had any involvement in or knowledge of the conditions of plaintiff's confinement there, particularly the alleged denial of food. Since it is those atypical conditions, and not the transfer to Level I itself that

gives rise to a constitutional claim, plaintiff's claims against Chappius must be dismissed.  *See Shannon v. Selsky*, No. 04 Civ.1939, 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10, 2005) ("Plaintiff must point to some specific conduct by [defendant] that affected plaintiff's particular conditions of confinement in such a way as to render them unconstitutionally deviant from normal SHU conditions").

## IV. Property Damage Claim

Plaintiff also alleges that defendants Frisbie, Rogers and Forest intentionally destroyed some of plaintiff's personal property.  It is well settled, however, that "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)), *cert. denied*, 541 U.S. 988 (2004); *see also Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (only post-deprivation remedy is required following intentional destruction of an inmate's personal property by a prison guard, because the state was not "in a position to provide for predeprivation process").  The Second Circuit has held that New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates, *see Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 1983).  Plaintiff's property damage claim is therefore dismissed.

**V. Official-Capacity Claims**

Plaintiff has sued all the defendants in both their individual and official capacities. Plaintiffs' claims against defendants in their official capacities are barred by the Eleventh Amendment and are therefore dismissed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Smart v. Goord*, No. 04 Civ. 8850, 2006 WL 2266306, at *1 (S.D.N.Y. Aug. 8, 2006).

## CONCLUSION

Defendants' motions for summary judgment (Dkt. #11, #21) are granted in part and denied in part. Plaintiff's claims against defendants Michael McGinnis and Paul Chappius, plaintiff's claims against all defendants in their official capacities, and plaintiff's claims for property damage are dismissed. In all other respects, defendants' motions are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      September 21, 2006.